## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES BERMINGHAM )
3913 Highwood Court, NW )
Washington, DC 20007 )
)
and )
)
SUSAN BERMINGHAM )
3913 Highwood Court, NW )   Ci~ ᴺ~
Washington, DC 20007 )      CASE NUMBER  1:06CV00370
)
                           JUDGE: Richard J. Leon
Plaintiffs, )
)                          DECK TYPE: Personal Injury/Malpractic
vs. )
)                          DATE STAMP: 03/02/2006
MERCK & CO., INC., )
One Merck Drive )
Whitehouse Station, NJ 08889 )
)
Defendant. )
)

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that defendant Merck & Co., Inc. ("Merck"), through

undersigned counsel, hereby removes the above-captioned action from the Superior Court of the

District of Columbia to the United States District Court for the District of Columbia, pursuant to

28 U.S.C. §§ 1332, 1441, and 1446, and respectfully states to this Court the following:

1.     This action involves allegations regarding the prescription drug Vioxx®

("Vioxx"). On February 16, 2005, the Judicial Panel on Multidistrict Litigation issued an order

transferring 148 Vioxx products liability cases to the United States District Court for the Eastern

District of Louisiana (Fallon, J.) for coordinated pretrial proceedings under 28 U.S.C. § 1407.

Merck intends to seek the transfer of this action to that Multidistrict Litigation, *In re VIOXX*

*Products Liability Litigation,* MDL No. 1657, and will shortly provide the MDL Panel notice of

this action pursuant to the "tag-along" procedure contained in the MDL Rules.

      2.      On or about September 21, 2005, Plaintiffs James Bermingham and Susan

Bermingham ("Plaintiffs") filed this civil action against Merck in the Superior Court of the

District of Columbia, bearing Number 05-CA-0007674.

      3.      As more fully set out below, this case is properly removed to this Court pursuant

to 28 U.S.C. §§ 1332, 1441, and 1446 because Merck has: (1) satisfied the procedural

requirements for removal; and (2) this Court has subject matter jurisdiction over this action

pursuant to 28 U.S.C. § 1332.

## I.    MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

      4.      Merck has not been served with the Summons and Complaint in this matter. This

Notice of Removal therefore is timely filed pursuant to 28 U.S.C. § 1446(b). *See Murphy*

*Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999).

      5.      Merck is the only defendant in this action. Therefore, Merck need not obtain the

consent of any party to remove this action.

      6.      The United States District Court for the District of Columbia embraces the place

in which the removed action was pending. 28 U.S.C. §§ 116(c), 1441(a).

      7.      No previous application has been made for the relief requested herein.

      8.      A copy of all available pleadings and orders in this action, including the

Complaint, is attached as Exhibit 1. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of

Removal is being served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the Superior Court of the District of Columbia.

## II.  REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000.00, exclusive of costs and interest, and is between citizens of different states.

### A.     Complete Diversity of Citizenship.

10.     There is complete diversity between the Plaintiffs, citizens of the District of Columbia, and Merck, a citizen of New Jersey.

11.     Plaintiff James Bermingham alleges that he is a citizen and resident of the District of Columbia. (Compl. ¶ 1.) Plaintiff James Bermingham does not allege any alternative state of residence. Accordingly, upon information and belief, Plaintiff James Bermingham is domiciled in, and a citizen of, the District of Columbia for purposes of determining diversity.

12.     Plaintiff Susan Bermingham alleges that she is a citizen and resident of the District of Columbia. (Compl. ¶ 2.) Plaintiff Susan Bermingham does not allege any alternative state of residence. Accordingly, upon information and belief, Plaintiff Susan Bermingham is domiciled in, and a citizen of, the District of Columbia for purposes of determining diversity.

13.     Merck is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business at One

3

Merck Drive, White House Station, New Jersey, and therefore, is a citizen of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

## B. The Amount in Controversy Requirement is Satisfied.

14.    Plaintiffs pray for judgment against Merck "in the amount of Ten Million Dollars ($10,000,000.00) compensatory damages, and Twenty Million Dollars ($20,000,000) punitive damages, plus interest, attorneys' fees and costs." (Compl., Prayer for Relief, at 13, 15, 16, 17, 19, 21, 22.) Thus, Plaintiffs' claims far exceed the $75,000 jurisdictional threshold.

WHEREFORE, Merck respectfully removes this action from the Superior Court of the District of Columbia, bearing Number 05-CA-0007674, to this Court pursuant to 28 U.S.C. § 1441.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
    Douglas R. Marvin
    (D.C. Bar No. 933671)
    Paul K. Dueffert
    (D.C. Bar No. 435452)

    725 Twelfth Street, N.W.
    Washington, D.C.  20005
    (202) 434-5000

Dated:  March 2, 2006                Attorneys for Defendant Merck & Co., Inc.

4

Of Counsel:

John H. Beisner (Bar No. 320747)
Jessica D. Miller (Bar No. 457021)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300

Norman C. Kleinberg
Theodore V. H. Mayer
Charles Avrith
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6000

## CERTIFICATE OF SERVICE

I hereby certify that I have this 2nd day of March, 2006 caused a true and correct copy of the foregoing Notice of Removal of Defendant Merck & Co., Inc. to be served by first-class mail, postage prepaid, on:

> Robert K. Jenner
> Janet, Jenner & Suggs, LLC
> 1829 Reisterstown Road, Suite 320
> Baltimore, MD  21208

Paul K. Dueffert

# Exhibit 1

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

05-0007674

| James Bermingham, et ux. |
| --- |

*Plaintiff*

VS.

| Merck & Co., Inc. |
| --- |

*Defendant*

Civil Action No. [_____]

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below**.   If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| Robert K. Jenner, Esquire |
| --- |
Name of Plaintiff's Attorney

| Janet, Jenner & Suggs, LLC |
| --- |
Address

| 1829 Reisterstown Rd., Ste. 320 |
| --- |

| Baltimore, MD 21208 410-653-3200 |
| --- |
Telephone

By _____

Deputy Clerk

Date [ 9/ 21/ 05 ]

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 91

**NOTE:** SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

# IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

|  |  |
|---|---|
| JAMES BERMINGHAM<br>3913 Highwood Court, NW<br>Washington, D.C.    20007<br><br>and<br><br>SUSAN BERMINGHAM<br>3913 Highwood Court, NW<br>Washington, D.C.    20007<br><br>Plaintiffs<br><br>v.<br><br>MERCK & CO., INC.<br>One Merck Drive<br>Whitehouse Station, New Jersey 08889<br><br><br>SERVE ON:  Registered Agent<br>CT Corporation System<br>1015 15th St., NW<br>Suite 1000<br>Washington, DC 20005<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

RECEIVED
Civil Clerk's Office

SEP 2 1 2005

Superior Court of the
District of Columbia
Washington, D.C.

## 05-0007674

Case No.: _____

COMPLAINT AND
JURY DEMAND

## COMPLAINT AND JURY DEMAND

Plaintiffs, James Bermingham and Susan Bermingham, by and through their attorneys,

Robert K. Jenner, Esquire, and Janet, Jenner & Suggs, LLC, hereby sue Defendant, Merck & Co.,

Inc.  In support of their claim, Plaintiffs state as follows:

## PREAMBLE

In May 2000, pharmaceutical giant, Merck & Co, Inc., was criticized for its handling of the multibillion-dollar pain-killer, Vioxx. The company's top research and marketing executives met at that time to consider the fate of its blockbuster drug which had been on the market for barely a year. They considered whether to develop a study to test the credibility of information that it was receiving that Vioxx might pose a heart risk. Two months earlier, results from a clinical trial conducted for other reasons undeniably signaled such dangers.

But the Merck executives rejected pursuing a study focused on Vioxx's risks of cardiovascular events and strokes. Merck's marketers apparently feared such a study could send the wrong signal about the company's confidence in Vioxx, which already faced fierce competition from a rival drug, Celebrex. As reported in the national media, a slide prepared for the meeting read: "At present, there is no compelling *marketing need* for such a study. . . . The implied message is not favorable."

Over the next few years, Merck replayed the same mantra: that Vioxx was safe unless proven otherwise. But Merck's handling of Vioxx reveals that its neglect, soon after the drug's safety was questioned, foreseeably resulted in one of the nation's worst public health disasters.

Despite knowing that its warnings were ineffective, and despite knowing that Vioxx may cause serious gastrointestinal side effects, Merck concealed or downplayed the dangers associated with Vioxx until, under pressure from the FDA and faced with the reality of a public health crisis of its own creation", Merck withdrew Vioxx from the market on September 30, 2004. Having let profits trump patient safety, Merck created a medical catastrophe that left an estimated 27,000 to 50,000 people dead or maimed from heart attacks, strokes and clotting disorders. As a major

editorial in Britain's leading medical journal, concluded: "With Vioxx, Merck . . . acted out of a ruthless, short-sighted and irresponsible self-interest." (Lancet, November 5, 2004).

## THE PARTIES

1.      Plaintiff, James Bermingham, is a citizen of the District of Columbia residing at 3913 Highwood Court, N.W., Washington, D.C.

2.      Plaintiff, Susan Bermingham, is a citizen of the District of Columbia residing at 3913 Highwood Court, N.W., Washington, D.C.

3.      At all times relevant to this Complaint, Defendant, Merck & Co., Inc. (hereinafter "Merck") was and is a New Jersey corporation which transacts business and conducts business within the District of Columbia. The principal place of business of the defendant was and is One Merck Drive, Whitehouse Station, New Jersey. At all times relevant to this Complaint, Defendant Merck was engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling and marketing, either directed or indirectly through third parties or related entities, the pharmaceutical drug Vioxx®. Vioxx is the brand name of rofecoxib.

## JURISDICTION AND VENUE

4.      Defendants are amendable to service of process in the District of Columbia in that Defendant is doing business in the District of Columbia, have committed a tort in whole or in part in the District of Columbia, and/or have continuing minimum contacts within the District of Columbia.

5.      Merck is amenable to service of process in the District of Columbia in that Merck is doing business in the District of Columbia, has committed a tort in whole or in part in the District of Columbia, and/or has continuing minimum contacts within the District of Columbia. James

-3-

Bermingham suffered a stroke in the District of Columbia following his use of Vioxx . Upon information and belief, defendant Merck advertise and solicit business from District of Columbia residents, including but not limited to the Plaintiff.

## FACTUAL BACKGROUND

7.    James Bermingham was born on April 4, 1939 in Brooklyn, New York. Other than arthritis pain, Mr. Bermingham was in overall general good health.

8.    On or around August 5, 2003, Mr. Bermingham's doctor prescribed Vioxx 25mg to relieve arthritis pain. He took the tables from approximately that date through March 3, 2004.

9.    Mr. Bermingham suffered a stroke on March 3, 2004. He was taken to Georgetown University Hospital and remained in the ICU for ten days. The stroke caused paralysis on his left side. He then spent the next four weeks at the National Rehabilitation Hospital. Even when released, Mr. Bermingham could not walk. He spent another two months in rehabilitation. As a direct result of being prescribed and taking Vioxx, Plaintiff James Bermingham suffered a stroke, as well as severe conscious pain and suffering, embarrassment, mental anguish, loss of confidence, a shortened life, lost economic benefits as well as expenses for care, treatment and hospitalization among other damages.

**B.    General Allegations Concerning Merck & Co., Inc.**

10.    Vioxx is the brand name of rofecoxib, one of a class of drugs called "prostaglandins," which work to reduce inflammation and pain by providing analgesic and anti-inflammatory benefits to persons with, among other conditions, arthritis and muscle pain. Prostaglandins are COX (cyclooxygenase) inhibitors; COX enzymes metabolize arachidonic acid to produce prostaglandins.

-4-

11.    Vioxx is a COX-2 inhibitor, which is designed to produce prostaglandins at inflammatory sites, and to produce prostacyclin, a vasodilator and an inhibitor of platelet aggregation.

12.    Merck submitted an Application to Market a New Drug for Human Use ("NDA") for rofecoxib to the United States Food and Drug Administration ("FDA") on November 23, 1998, for tablets at doses of 12.5 mg and 25 mg, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea. The FDA denoted this application as NDA 21-042.

13.    The same day, Merck also submitted an NDA for rofecoxib to the FDA for oral suspension, at doses of 12.5 mg/ml and 25 mg/ml, for relief of the same signs and symptoms. The FDA denoted this application as denoted NDA 21-052.

14.    On or about May 20, 1999, the FDA approved NDAs 21-042 and 21-052 (the "NDA") for rofecoxib, for relief of the signs and symptoms of osteoarthritis, the management of acute pain, and the treatment of primary dysmenorrhea.

15.    At the time the FDA approved the NDA, the labeling for rofecoxib stated, in the section entitled "Special Studies -- Upper Endoscopy in Patients with Osteoarthritis," "Treatment with VIOXX 25 mg daily or 50 mg daily was associated with a significantly lower percentage of patients with endoscopic gastroduodenal ulcers than treatment with ibuprofen 2400 mg daily. However, the studies cannot rule out at least some increase in the rate of endoscopic gastroduodenal ulcers when comparing VIOXX to placebo."

16.    The "Warnings" section of the labeling for rofecoxib, at the time the drug was approved by the FDA, contains a section, "Gastrointestinal (GI) Effects -- Risk of GI Ulceration, Bleeding, and Perforation."

17.    Merck submitted sNDA-007 with the goal of establishing a gastrointestinal ("GI") safety claim for rofecoxib. In conjunction with the sNDA, Merck performed the Vioxx GI Outcomes Research ("VIGOR") Protocol, No. 088-04, entitled "A Double-Blind, Randomized, Stratified, Parallel-Group Study to Assess the Incidence of PUBs During Chronic Treatment With MK-0966 or Naproxen in Patients With Rheumatoid Arthritis: U.S. Cohort." The VIGOR study was performed from January 6, 1999 through March 17, 2000.

18.    The objectives of the VIGOR study were to (1) "determine the relative risk of confirmed PUB (Perforation, Ulcers, Bleeding) in patients taking MK-0966 50 mg daily compared to patients in the group taking naproxen 1,000 mg/day," and (2) "study the safety and tolerability of MK-0966 in patients with rheumatoid arthritis."

19.    In industry-sponsored studies presented in June, 2000 at the European United League Against Rheumatism (EULAR), an organization in which Merck is a member and corporate sponsor, it was revealed that **Vioxx use resulted in a statistically significant increase in hypertension and stroke.** Merck did nothing to further disseminate these studies or warn consumers. Instead, it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, *Pharmacy Today*, in an article entitled "Spin War Aside, Lessons Emerge from COX-2 Trials," August, 2000, page 3.

20.    At the same time that Merck was denying the ill health effects associated with Vioxx, it engaged in a massive advertising and sampling program and continued to increase its market share, enhancing Merck's financial stability to the detriment of consumers. In the year 2000 alone, Merck earned more than $2 billion in profit, and held approximately 23 percent of the market.

21.    Merck continued to downplay and/or withhold information regarding the hazards of Vioxx. In November, 2000, its disinformation campaign included arranging the publication of a study in the New England Journal of Medicine in which it knowingly downplayed and/or withheld information about the severity of cardiovascular risks associated with consumption of Vioxx versus naproxen.

22.    On or about August 29, 2001, the Journal of the American Medical Association (JAMA) published a peer-reviewed, human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, Dr. D. Mukhisjee, et al. The study showed that Merck had concealed that the relative risk of developing a "confirmed adjudicated thrombotic cardiovascular event" (defined in the article as "myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks") among Vioxx users in Merck's trials, including VIGOR, ranged from 2.2 for event-free survival analysis, 2.38 compared to naproxen users, and 4.89 for developing serious cardiovascular events among aspirin-indicated patients. *See* Mukhisjee, D., et al., *Risk of Cardiovascular Events Associated With Selective Cox-2 Inhibitors,* J.A.M.A. 286:8, 954-959, Aug. 22/29, 2001. In addition, the annualized myocardial infarction rates for Vioxx users compared to placebo revealed a statistically significant increase among Vioxx users.

23.    In the JAMA study, the authors stated that, "by decreasing PG12 production [Vioxx] may tip the natural balance between prothrombotic thromboxane A2 and antithrombotic PG12, potentially **leading to an increase in thrombotic cardiovascular events.**" *Id.* at 957. In a follow-up peer-reviewed study reported in the Journal of the American College of Cardiology on or about February 6, 2002, Dr. Richard J. Bing conducted scientific testing and confirmed that the Cox-2 inhibitor "tips the balance of prostacyclin/thromboxane in favor of thromboxane, leading to increased vascular and thrombotic events." Bing, R., & Lomnicka, M., *Why Do Cyclo-Oxygenase-2 Inhibitors Cause Cardiovascular Events?*, J.A.C.C., 39:3, Feb. 6, 2002. This is further supported by studies completed at the University of Pennsylvania. Cheng, Y., et al., *Role of Prostacyclin in the Cardiovascular Response to Thromboxane A2,* Journal of Science, V. 296:539-541, Apr. 19, 2002.

24.    On September 17, 2001, Thomas W. Abrams, R.Ph., MBA, Director of the FDA Division of Drug Marketing, Advertising, and Communications, issued an FDA Warning Letter to Raymond V. Gilmartin, President and CEO of Merck, relating to "promotional activities and materials for the marketing of Vioxx (rofecoxib) tablets.

25.    The Warning Letter stated that Merck had "engaged in a promotional campaign for Vioxx that **minimizes the potentially serious cardiovascular findings** that were observed in the Vioxx Gastrointestinal Outcomes Research (VIGOR) study, and thus, misrepresents the safety profile for Vioxx." The letter further states:

> Specifically, your promotional campaign discounts the fact that in the VIGOR study, **patients on Vioxx were observed to have a four to five fold increase in myocardial infarctions (MIS)** compared to

-8-

patients on the comparator non-steroidal anti-inflammatory drug (NSAID), Naprosyn (naproxen).

26.    The eight page Warning Letter provides a detailed outline of Merck's conduct which supports the FDA's issuance of the Warning Letter, and makes the following "**Conclusions and Requested Actions:**"

> **The promotional activities and materials described above minimize the potentially serious Cardiovascular findings that were observed in the VIGOR study,** minimize the Vioxx/Coumadin drug interaction, omit crucial risk information associated with Vioxx therapy, contain unsubstantiated comparative claims, and promote unapproved uses. On December 16, 1999, we also objected to your dissemination of promotional materials for Vioxx that misrepresented Vioxx's safety profile, contained unsubstantiated comparative claims, and lacked fair balance.
>
> Due to the seriousness of these violations, and the fact that your violative promotion of Vioxx has continued despite our prior written notification regarding similar violations, we request that you provide a detailed response to the issues raised in this Warning Letter on or before October 1, 2001.
>
> This response should contain an action plan that includes a comprehensive plan to disseminate corrective messages about the issues discussed in this letter to the audiences that received these misleading messages. This corrective action plan should also include:
>
> 1.    Immediately ceasing all violative promotional activities, and the dissemination of violative promotional materials for Vioxx.
>
> 2.    Issuing a "Dear Healthcare Provider" letter to correct false or misleading impressions and information. This proposed letter should be submitted to us for review prior to its release. After agreement is reached on the content and audience, the letter should be disseminated by direct mail to all healthcare providers who were, or may have been exposed to the violative promotion.
>
> 3.    A written statement of your intent to comply with "1" and "2" above.

27.    On April 11, 2002, the FDA approved a supplemental application for the use of Vioxx (rofecoxib) for rheumatoid arthritis, adding this the indication to the previously approved indications for osteoarthritis and pain. The FDA also approved new labeling, a "Dear Doctor" letter, and a new patient package insert. The Labeling and the "Dear Doctor" letter contained information concerning the results of the VIGOR study.

28.    The revised label further states that the administration of Vioxx, 50 mg, was associated with a higher incidence of gastrointestinal symptoms.

29.    Further, the "Dear Doctor" letter, approved in conjunction with the revisions to the Vioxx label, outlines the changes to the label.

30.    The revised "Patient Information" sheet does not add any information about the results of the VIGOR study."

31.    The "Patient Information" sheet is the only written document that is provided to a patient for whom Vioxx is prescribed.

32.    Both the initial labeling and the revised labeling are ineffective because they do not properly advise physicians and patients of the potential gastrointestinal side effects of Vioxx.

33.    Despite knowing that its warnings were ineffective, and despite knowing that Vioxx may cause serious cardiovascular, clotting, and gastrointestinal side effects, Merck concealed and/or downplayed the dangers associated with Vioxx until, under pressure from the FDA and faced with the reality of the public health crisis it created, Merck withdrew Vioxx from the market on September 30, 2004.

-10-

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

34.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

35.    At all relevant times, Merck had a duty to exercise reasonable care, and to comply with the existing standard of care, in its preparation, design, research, development, manufacture, inspection, labeling, marketing, promotion, and sales of Vioxx, which it introduced into the stream of commerce, including a duty and obligation to insure that Vioxx did not cause users to suffer from unreasonable, dangerous or untoward adverse side effects.

36.    At all times relevant, Merck owed a duty to warn consumers of the risks, dangers, and adverse side effects of Vioxx.

37.    Merck breached its duty of care, and failed to exercise ordinary care in the preparation, design, research, development, manufacturing, inspection, labeling, marketing, promotion, and selling of Vioxx which it introduced into the stream of commerce, because Merck knew or should have known that Vioxx created the risk of unreasonable, dangerous or untoward adverse side effects.

38.    Merck knew, or in the exercise of reasonable care, should have known that Vioxx was of such a nature that, if not properly prepared, designed, researched, developed, manufactured, inspected, labeled, marketed, promoted, and sold, it was likely to cause injury to those who took it.

39.    Defendant breached its duty of care, and failed to use due care, in the manner in which it prepared, designed, researched, developed, manufactured, inspected, labeled, marketed, promoted, and sold Vioxx in that Merck:

a.    Failed to design, test and manufacture Vioxx properly to prevent the aforementioned risks to individuals when Vioxx is used as a medication for arthritis and other pain;

b.    Failed to accompany Vioxx with proper warnings regarding reasonable adverse side effects associated with the use of Vioxx and the comparative severity and duration of such adverse effects, despite the fact that Merck knew, or should have known that numerous case reports, adverse event reports, and other data associate Vioxx with reports of gastrointestinal side effects, heart attacks, strokes, and clotting disorders;

c.    Failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety of Vioxx;

d.    Failed to provide adequate training and information to medical care providers for the appropriate use of Vioxx;

e.    Failed to warn Plaintiff and healthcare providers, prior to actively encouraging and promoting the sale of Vioxx, either directly, or indirectly, orally, in writing, or other media about the following:

i.    The adverse side effects associated with the use of Vioxx, including, but not limited to ulcers and gastrointestinal side effects;

ii.    The adverse side effects associated with the use of Vioxx, including, but not limited to heart attack, strokes and clotting disorders; and,

iii.    The possibility of becoming disabled as a result of using Vioxx.

f.    Failed to develop and implement timely a safer, alternative design of Vioxx, which would meet the same need without the known risks associated with Vioxx and which would not have made the product too expensive to maintain its utility.

40.    Despite the fact that Merck knew, or reasonably should have known, that Vioxx caused unreasonable and dangerous side effects, including, but not limited to ulcers and gastrointestinal side effects, which many users would be unable to remedy by any means, Merck continued to promote and market Vioxx to consumers, including Plaintiff, when safer, alternative pharmaceutical agents for the treatment of arthritis and muscular pain symptoms were available.

41.    Merck knew, or reasonably should have known, that consumers such as Plaintiff would foreseeably suffer injury as a result of Merck's failure to exercise due care, and its failure to comply with the standard of care, as set forth above.

42.    As a direct and proximate result of the acts and omissions of Merck, Plaintiff ingested Vioxx and suffered a stroke.

WHEREFORE, Plaintiffs pray for judgment against Defendant in the amount of Ten Million Dollars ($10,000,000.00) compensatory damages, and Twenty Million Dollars ($20,000,000) punitive damages, plus interest, attorneys' fees and costs.

## COUNT II
## STRICT LIABILITY

43.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

44.    Defendant is a manufacturer and/or supplier of Vioxx, and placed it into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the product.

45.    Vioxx was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation.

46.    Vioxx was expected to and did reach Plaintiff without substantial change in condition. Alternatively, the Vioxx manufactured and/or supplied by Defendant was defective in design or formulation, in that when it left the hands of the manufacturer and/or supplier, it was unreasonably dangerous and more dangerous than an ordinary consumer would expect.

47.    The Vioxx manufactured and/or supplied by Defendant was defective due to inadequate warning and/or inadequate clinical trials, testing and study, and inadequate reporting regarding the results of it.

48.    The Vioxx manufactured and/or supplied by Defendant was defective due to inadequate post-marketing warning or instruction because, after Defendant knew or should have known of the risk of injury from Vioxx, it failed to provide adequate warnings to the medical community and consumers, and continued to promote the product as safe and effective.

-14-

49.     The Vioxx was manufactured, distributed, tested, sold, marketed, advertised and represented defectively by the Defendant and such defects were substantial factors in bringing about Mr. Bermingham's stroke.

50.     As the direct and proximate cause of the defective condition of the Vioxx as manufactured and/or supplied by Defendant, and of its negligence, carelessness, other wrongdoing and actions described herein, Mr. Bermingham suffered a stroke.

WHEREFORE, Plaintiffs pray for judgment against Defendant in the amount of Ten Million Dollars ($10,000,000.00) compensatory damages, and Twenty Million Dollars ($20,000,000) punitive damages, plus interest, attorneys' fees and costs.

## COUNT III
## STRICT PRODUCTS LIABILITY (FAILURE TO WARN)

51.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

52.     Defendant is a manufacturer and/or supplier of Vioxx, and placed it into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the product.

53.     The Vioxx manufactured and/or supplied by Defendant was not accompanied by proper warnings to physicians, the medical community and consumers regarding all possible adverse side effects associated with the use of Vioxx and the comparative severity and duration of such adverse effects.

54.     The warnings and information given to the medical community and consumers did not accurately reflect the symptoms, scope or severity of the potential side effects.

-15-

55.    Defendant failed to perform adequate testing which would have shown that their Vioxx possessed serious potential side effects with respect to which full and proper warnings, accurately and fully reflecting symptoms, scope and severity, should have been made.

56.    The Vioxx manufactured and/or supplied by Defendant was defective due to inadequate post-marketing warning or instruction because, after Defendant knew or should have known of the risk of injury and death from Vioxx, it failed to provide adequate warnings to physicians or consumers.  And despite its inadequate post-marketing warnings and instructions to physicians, the medical community, and consumers, Defendant continued to promote the product aggressively.

57.    Had adequate warnings or instructions been provided, Mr. Bermingham would not have taken Vioxx, and would not have suffered a stroke.

58.    As the direct and proximate cause of the defective condition of Vioxx as manufactured and/or supplied by Defendant, Mr. Bermingham suffered a stroke.

WHEREFORE, Plaintiffs pray for judgment against Defendant in the amount of Ten Million Dollars ($10,000,000.00) compensatory damages, and Twenty Million Dollars ($20,000,000) punitive damages, plus interest, attorneys' fees and costs.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

59.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

60.    Merck manufactured, sold, distributed, marketed, and/or promoted the Vioxx that Plaintiff ingested.

61.    The Vioxx that Plaintiff ingested was expected to, and did reach him without a substantial change in condition.

62.    Merck, its agents and employees, in manufacturing, selling, distributing, supplying, marketing and/or promoting Vioxx, impliedly warranted that Vioxx was not unreasonably dangerous, and instead warranted that it was of merchantable quality, reasonably fit and safe for its intended purpose, reasonably foreseeable use as a medication for arthritis and muscular pain.

63.    Merck, its agents and employees, breached these warranties in that Vioxx was not of merchantable quality, was not fit for its intended and reasonably foreseeable use, and was unreasonably dangerous in light of the risk of ulcers and gastrointestinal side effects associated with its use, and in light of other risks of serious injuries and adverse side effects to foreseeable users.

64.    Merck, its agents and employees, also failed to provide adequate warnings with Vioxx, rendering it unreasonably dangerous and unfit for the intended and/or reasonably foreseeable purposes of use, in breach of this warranty.

65.    Plaintiff justifiably and detrimentally relied, either directly or through his physician and/or pharmacist, upon Merck's warranties and representations in the purchase and use of Vioxx.

66.    As a direct and proximate result of Merck's acts and omissions, Plaintiff ingested Vioxx and suffered a stroke, causing him to suffer significant injuries.

WHEREFORE, Plaintiffs pray for judgment against Defendant in the amount of Ten Million Dollars ($10,000,000.00) compensatory damages, and Twenty Million Dollars ($20,000,000) punitive damages, plus interest, attorneys' fees and costs.

## COUNT V
## BREACH OF EXPRESS WARRANTY

67.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

68.    Merck placed Vioxx into the stream of commerce for sale and recommended its use to physicians, the FDA, and consumers without adequately warning of the risks associated with the use of Vioxx.

69.    Merck, its agents and employees, in manufacturing, selling, distributing, supplying, marketing, and/or promoting the drug Vioxx, expressly warranted that the drug was safe and effective as a medication for arthritis and muscular pain.

70.    Merck had a duty to exercise reasonable care in the research, development, design, testing, manufacture, inspection, labeling, distribution, marketing, promotion, sale, and release of Vioxx, including a duty to:

      a.    Ensure that the product did not cause the user unreasonably dangerous side effects;

      b.    Warn of dangerous and potentially fatal side effects; and

      c.    Disclose adverse material facts when making representations to physicians, the FDA, and the public, including Plaintiff.

71.    Merck was under a duty to disclose Vioxx' defective and unsafe nature to physicians, the FDA, consumers, and users, such as Plaintiff. Merck had sole access to material facts concerning these defects, and Merck knew that physicians, the FDA, and users, such as Plaintiff, could not have reasonably discovered such defects.

72.    Merck breached its warranty in that Vioxx was not safe and effective for its intended, reasonably foreseeable use as a medication for arthritis and muscular pain because of the risk of ulcers and other gastrointestinal side effects associated with its use and in light of other risks of serious injuries to foreseeable users.

73.    When Plaintiff's physician prescribed Vioxx and he decided to use Vioxx, both Plaintiff and his physician reasonably relied on Merck and its agents to have disclosed Vioxx' known defects, risks, dangers, and side effects.

74.    Plaintiff's physician, the FDA, and/or Plaintiff had no knowledge of the falsity or incompleteness of Merck's representations concerning Vioxx when Plaintiff's physician prescribed or otherwise provided Vioxx to him.

75.    Plaintiff justifiably and detrimentally relied on Merck's warranties and representations regarding Vioxx in deciding to use it.

76.    The Vioxx that Plaintiff ingested reached him without a substantial change in condition from the condition in which Merck manufactured, sold, distributed, marketed, and/or promoted it.

77.    As a direct and proximate result of Merck's acts and omissions, Plaintiff ingested Vioxx and suffered a stroke, causing him to suffer significant injuries.

WHEREFORE, Plaintiffs pray for judgment against Defendant in the amount of Ten Million Dollars ($10,000,000.00) compensatory damages, and Twenty Million Dollars ($20,000,000) punitive damages, plus interest, attorneys' fees and costs.

-19-

<u>COUNT VI</u>
<u>FRAUD AND MISREPRESENTATION</u>

78.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

79.    Merck, having undertaken the manufacturing, marketing, dispensing, distribution, and promotion of Vioxx, owed prescribers, the FDA, and public, including Plaintiff, a duty to provide accurate and complete information regarding this product.

80.    Merck knew of should have known that Vioxx causes serious and life-threatening injuries, but Merck failed to warn the public, including Plaintiff, of those dangers.

81.    Merck's advertising program, by affirmative misrepresentations and omissions, falsely and deceptively sought to create the image and impression that Vioxx was safe and did not have unacceptable side effects.

82.    Merck misrepresented to Plaintiff and the public its knowledge about the likelihood that Vioxx would cause injuries such as Plaintiff's. Merck concealed, failed to disclose, misstated, downplayed, and understated the health hazards and risks associated with the use of Vioxx. Merck falsely and deceptively kept relevant information from Vioxx users and minimized concerns regarding Vioxx' safety to induce Plaintiff and the public to purchase and use Vioxx.

83.    In reasonable, detrimental reliance on the truth of Merck's representations about Vioxx' safety, Plaintiff purchased and used it in the manner and for the purpose intended as represented and instructed by Merck.

84.    Merck's representations, misrepresentations, acts and omissions deprived Plaintiff and other foreseeable Vioxx users of free choice whether to expose themselves to its dangers.

-20-

85.    As a direct and proximate result of Plaintiff's lack of awareness of Vioxx' dangers, Plaintiff suffered a stroke, causing him to suffer significant injuries.

WHEREFORE, Plaintiffs pray for judgment against Defendant in the amount of Ten Million Dollars ($10,000,000.00) compensatory damages, and Twenty Million Dollars ($20,000,000) punitive damages, plus interest, attorneys' fees and costs.

## COUNT VII
## LOSS OF CONSORTIUM

85.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein at length, and further alleges:

86.    Plaintiff Susan Bermingham was at all times relevant hereto the spouse of Plaintiff James Bermingham.

87.    Mrs. Bermingham has necessarily paid and has become liable to pay for medical aid, treatment and for medications, and will necessarily incur further expenses of a similar nature in the future.

88.    Mrs. Bermingham has been caused, presently and in the future, to suffer the loss of her spouse's companionship, services, society, and the ability of Mr. Bermingham, has in those respects been impaired and depreciated, and the marital association between husband and wife has been altered and, accordingly, has been caused great mental anguish.

89.    Mrs. Bermingham is entitled to punitive damages because Defendant's failure to warn was reckless and without regard for the public's safety and welfare. Defendant misled both the medical community and the public at large, including Plaintiffs herein, by making false representations about the safety of its product. Defendant downplayed, understated and disregarded

-21-

their knowledge of the serious and permanent side effects associated with Vioxx, despite available information demonstrating their products were likely to cause serious and sometimes fatal side effects to its users.

WHEREFORE, Plaintiffs pray for judgment against Defendant in the amount of Ten Million Dollars ($10,000,000.00) compensatory damages, and Twenty Million Dollars ($20,000,000) punitive damages, plus interest, attorneys' fees and costs.

Respectfully submitted,

JANET, JENNER & SUGGS, LLC

Robert K. Jenner (DC Bar 399969)
1829 Reisterstown Road
Suite 320
Baltimore, Maryland 21208
(410) 653-3200
(410) 653-9030 facsimile

Attorney for Plaintiffs

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

|  |  |
|---|---|
| JAMES BERMINGHAM, *et al.*, ) |  |
| ) |  |
| Plaintiffs, ) | Case No.: _____ |
| ) |  |
| v. ) |  |
| ) |  |
| MERCK & CO., INC., ) |  |
| ) |  |
| Defendant. ) |  |

## DEMAND FOR JURY TRIAL

Plaintiffs, James Bermingham and Susan Bermingham, by and through their attorneys,

Robert K. Jenner and Janet, Jenner & Suggs, LLC, hereby elect to have this claim tried before a jury.

Respectfully submitted,

JANET, JENNER & SUGGS, LLC

*Robert K. Jenner*

Robert K. Jenner (DC Bar 399969)
1829 Reisterstown Road
Suite 320
Baltimore, Maryland 21208
(410) 653-3200
(410) 653-9030 facsimile

Attorney for Plaintiffs

-23-

February 3, 2006

CASE NAME:  JAMES BERMINGHAM et al Vs. MERCK & CO., INC. ,

CASE NO.    2005 CA 007674 B

The above-captioned Civil Actions case has been scheduled for Scheduling Conference Hearing on the date and time shown below.  All parties shall appear before Judge GEOFFREY M ALPRIN

HEARING DATE: Friday, March 03, 2006

TIME: 9:00 am

LOCATION:  500 Indiana Avenue N.W.
           Courtroom 320
           WASHINGTON, DC  20001

PLEASE BRING THIS NOTICE WITH YOU WHEN YOU APPEAR.

Civil Division

*Rule 16 - new Rule*

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

JAMES BERMINGHAM, et ux.            :

        Plaintiffs,             :

                                 :

vs.                             :       CA No.  2005-CV-007674 B

                                 :       Judge Geoffrey M. Alprin

MERCK & CO., INC.              :       Status Conference: 3/3/06

                                 :

        Defendant.            :

## PLAINTIFFS' MOTION FOR EXTENSION OF TIME
## TO SERVE SUMMONS AND COMPLAINT AND
## FOR CONTINUANCE OF STATUS CONFERENCE

TO THE CLERK OF THE COURT:

Come now the Plaintiffs, James Bermingham and Susan Bermingham, and move the Court

for an extension of time within which to serve the Summons and Complaint, and for a continuance

of the Scheduling Conference set for March 3, 2006, and as reasons therefore, respectfully direct the

Court's attention to the Statement of Points and Authorities attached hereto and prayed to be read

as a part hereof.

                              Respectfully submitted,

                              JANET, JENNER & SUGGS, LLC

                              Robert K. Jenner      Bar # 399969
                              1829 Reisterstown Road, Suite 320
                              Baltimore, Maryland 21208
                              Tel: 410-653-3200
                              Fax: 410-653-6903
                              Attorneys for Plaintiffs

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

JAMES BERMINGHAM, et ux.   :
           :
 Plaintiffs,      :
           :
vs.          :  CA No.  2005-CV-007674 B
           :  Judge Geoffrey M. Alprin
MERCK & CO., INC.    :  Status Conference: 3/3/06
           :
 Defendant.     :

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES

1. The Complaint in the above captioned matter was filed on September 21, 2005.

2. According to SCR-Civ.40-III, Plaintiffs must serve the Defendant within sixty (60) days of the filing of the Complaint.

3. Due to an oversight within our firm, this Summons and Complaint was not served upon Defendant within the time allotted.

4. Therefore, we request an extension of time to serve the same until **April 25, 2006**. As a courtesy, upon learning of the oversight, we have provided counsel for Merck a copy of the Summons, Complaint and Scheduling Conference Notice, and have advised counsel and provided them with a copy of this Motion and Memorandum in Support.

5. Moreover, a status conference would not be appropriate at this time, as the defendant has not answered or otherwise responded to the complaint.  It is anticipated that the defendant will seek to have the matter removed to federal court, as has been its practice in all similar cases alleging negligence and strict liability with respect to its

2

drug, Vioxx.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Motion be granted.

Respectfully submitted,

JANET, JENNER & SUGGS, LLC

Robert K. Jenner         Bar # 399969
1829 Reisterstown Road, Suite 320
Baltimore, Maryland 21208
Tel: 410-653-3200
Fax: 410-653-6903
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _21ᵗʰ_ day of February 2006, a true and correct copy of the foregoing *Motion for Extension of Time to Serve Summons and Complaint* and *Memorandum of Points and Authorities* was sent via courier to the Court and first class mail to the following counsel:

William Hughes, Esquire
John Poulos, Esquire
Hughes Hubbard & Reed, LLP
101 Hudson St.
Suite 3601
Jersey City, NJ 07302

Diane Sullivan, Esquire
DECHERT LLP
Princeton Pike Corporate Center
P.O. Box 5218
Princeton, NJ 08543-5218

Stephen E. Marshall, Esquire
Venable LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, MD 21201

3

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

JAMES BERMINGHAM, et ux.      :
                                    :

     Plaintiffs,           :
                                      :         CA No. 2005-CV-007674 B

vs.                                 :         Judge Geoffrey M. Alprin
                                 :         Status Conference: 3/3/06

MERCK & CO., INC.          :
                                     :

     Defendant.          :

## O R D E R

UPON CONSIDERATION of the Plaintiffs' Motion for Extension of Time to Serve Summons and Complaint, and for Continuance of the Scheduling Conference Hearing, and for good cause appearing therefore, it is by this Court, this _____ day of _____, 2006, hereby,

ORDERED, that Plaintiffs' Motion be, and the same is hereby, **GRANTED**, and it is further,

ORDERED, that Plaintiffs may have through April 25, 2006, to serve their previously issued summons upon the defendant, and it is further,

ORDERED, that the Scheduling Conference set for March 3, 2006, be rescheduled to

_____.

_____
Judge Geoffrey M. Alprin
Superior Court, District of Columbia

Copies to:

Robert K. Jenner, Esquire
Janet, Jenner & Suggs, LLC
1829 Reisterstown Road, Ste 320
Baltimore, MD 21208

William Hughes, Esquire
John Poulos, Esquire
Hughes Hubbard & Reed, LLP
101 Hudson St., Suite 3601
Jersey City, NJ 07302

Diane Sullivan, Esquire
DECHERT LLP
Princeton Pike Corporate Center
P.O. Box 5218
Princeton, NJ 08543-5218

Stephen E. Marshall, Esquire
Venable LLP
1800 Mercantile Bank & Trust Building
2 Hopkins Plaza
Baltimore, MD 21201